IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BRIGGS V. STATE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KEVIN BRIGGS, APPELLEE, AND ROLF E. SHASTEEN, APPELLANT,

V.

STATE OF NEBRASKA, APPELLEE.

Filed February 3, 2015.    No. A-14-417.

Appeal from the Workers' Compensation Court: LAUREEN K. VAN NORMAN, Judge. Reversed and remanded with directions.

Rolf Edward Shasteen, of Shasteen & Morris, P.C., L.L.O., pro se.

Jon Bruning, Attorney General, and Elizabeth A. Gregory for appellee State of Nebraska.

IRWIN, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

Attorney Rolf Shasteen appeals from the order of the Nebraska Workers' Compensation Court which denied Shasteen's request for a further order to enforce a previously court-ordered attorney's lien. We reverse and remand with directions.

BACKGROUND

In the underlying workers' compensation action, on May 31, 2013, Shasteen filed a petition against the State of Nebraska (State) seeking compensation on behalf of Kevin Briggs for alleged injuries Briggs sustained to his low back, right elbow, and left shoulder in accidents arising out of and in the scope of his employment as a custodian at the University of Nebraska in August 2012 and May 2013. The petition alleged that Briggs was earning approximately $500 per week while employed. The State filed an answer on June 17 admitting that Briggs was employed as a custodian by the university on the alleged injury dates, but denied that any injuries

- 1 -

or disability complained about by Briggs was the result of an accident arising out of and in the scope of his employment with the university. The State further alleged that any medical bills or temporary or permanent disability incurred by Briggs was not due to work accidents, "but was the result of a preexisting disability and/or subsequent non-work accident or illness."

The next pleading in our record reflects that on August 20, 2013, Shasteen filed a motion to withdraw as counsel and to establish an attorney's lien. In that motion, Shasteen stated that he was "orally discharged" as counsel for Briggs on August 14, and requested an order allowing him to withdraw and to establish an attorney's lien "in compliance with his fee agreement."

According to an order entered by the compensation court on September 4, 2013, a hearing on Shasteen's motion was held on August 28. That September 4 order indicates that the court received into evidence two exhibits: Exhibit 1--the retainer agreement between Shasteen and Briggs, which provided that Shasteen was entitled to one-third of any workers' compensation benefits obtained by Briggs; and Exhibit 2--costs incurred by Shasteen in obtaining records from Briggs' medical providers. (We rely solely upon the content of the September 4 order because the record before us does not contain the bill of exceptions for the August 28 hearing; accordingly, the transcription of the hearing and Exhibits 1 and 2 are not available to us.) Also in the September 4 order, the trial court found that Shasteen had effectuated payment of temporary total disability (TTD) on behalf of Briggs, and therefore, one-third of each TTD check should be paid to Shasteen for so long as TTD continued. The court also found that the costs incurred were necessary and the responsibility of Briggs under the retainer agreement. The court's order allowed Shasteen to withdraw from representation, and granted Shasteen a lien for one-third of Briggs' TTD benefits and $117 for costs advanced. The State was ordered to "break out each [TTD] check and remit [one-third] to [Shasteen] and [two-thirds] to [Briggs]. This distribution procedure is to continue while [Briggs] is receiving [TTD] only."

On December 19, 2013, Shasteen filed a "Motion for Further Order," alleging that he had been paid only $169.36 pursuant to the court's order of September 4, and that the State had refused to pay amounts accrued prior to that date.

Briggs filed a *pro se* motion to dismiss on March 4, 2014, acknowledging that he was receiving all workers' compensation benefits to which he was entitled, and stated that he wished to dismiss his complaint without prejudice because he understood that to mean "that he may refile the lawsuit within the applicable limitations period." The court entered an order dismissing the case without prejudice on March 6.

A hearing on Shasteen's motion for further order took place on April 2, 2014. At that hearing, Shasteen offered three exhibits and reoffered Exhibits 1 and 2 from the prior hearing. Additionally, Shasteen informed the court by way of argument, not sworn testimony, that shortly after being retained by Briggs, Briggs apparently began receiving TTD checks but Briggs told Shasteen he was not getting any money and "he maintained that through the summer." Shasteen thought it made "perfect sense" that Briggs was not receiving any money since the State's answer reflected that the claim was denied. According to Shasteen, and in reference to Exhibit 3 (an indemnity payment summary), a check showed up at Shasteen's office "about the middle of July." When Shasteen took part of the check, Briggs objected and fired Shasteen. Shasteen then

obtained the attorney's lien order, but argued to the court (paraphrased) that the State only paid him his one-third share in TTD payments made after the court's September 4, 2013, order.

The State agreed that it only paid on Shasteen's lien as to TTD payments owed to Briggs after the entry of the September 4, 2013, order since it did not

> make sense for the order to be retroactive because we had already paid that money to Mr. Briggs. And for that order to be retroactive would mean that we would either have to pay Mr. Shasteen, in addition to paying Mr. Briggs, so we would be paying that money twice to two different people; or it would require us to get the money back from Mr. Briggs, and then give it to Mr. Shasteen, which I do not know of a mechanism by which we can do that.

The State further indicated that "[i]f it's the Court's order and intent for the State to pay that one-third TTD retroactively, prior to your order, I will gladly follow that order from you, if that is what you had meant for us to do." The State further noted that it believed the $117 in costs previously ordered had been paid to Shasteen. The court confirmed with the State that it had only paid Shasteen with regard to payments made subsequent to the September order, and asked Shasteen what amount he believed to be owed. In response, Shasteen referred the court to Exhibit 4. Additionally, Shasteen argued that the one third of any TTD paid and the $117 in costs ordered should have been taken "out of [Brigg's] $2,000 and given to me." The court inquired about there being "a larger payment made before [Brigg's] dismissed," and Shasteen directed the court to Exhibit 3 which Shasteen stated showed Briggs was paid "two grand" on February 12, 2014.

On April 9, 2014, the court entered an order on Shasteen's motion for further order. The court found that the payment log (Exhibit 3) "shows that Mr. Briggs was made a final payment of $2,000.77 for permanent partial disability on February 12, 2014. The final payment is the only payment at issue before the Court." The court then held, in relevant part:

> The Court's previous order entered on September 4, 2013, specifically finds Mr. Shasteen is only entitled to one-third of temporary total disability benefits paid to plaintiff. The Court has no information or evidence before it which would suggest that the final payment rendered to plaintiff on February 12, 2014, and purporting to be permanent partial disability benefits are anything other than that.
>
> The Court finds, therefore, that the motion of counsel should be and hereby is dismissed.

Shasteen timely appealed from that order.

## ASSIGNMENTS OF ERROR

Shasteen asserts that the compensation court erred in two ways: (1) by failing to hold that the attorney's lien applied to the entire balance of his approved attorney fee and not just to those benefits that were paid after the court's order approving the fee agreement; and (2) by failing to find that the State should have paid the balance of Shasteen's lien from the $2,000.77 permanent partial disability settlement.

STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Wingfield v. Hill Bros. Transp., Inc.*, 288 Neb. 174, 846 N.W.2d 617 (2014). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id*.

ANALYSIS

*Did the Attorney's Lien Apply to TTD Benefits Accrued before the Court's Order?*

The first of two issues presented in this case is to determine the actual amount owed to Shasteen pursuant to the attorney fee lien. At issue is whether the attorney's fee lien the court granted on September 4, 2013, was to apply only to TTD benefits accruing after the entry of that order, or if it was to apply to TTD benefits which had accrued prior to its entry. In other words, was the lien for the total of all TTD benefits, or just those accruing and being paid after the entry of the lien order? Therefore, we start our analysis by looking at the language of the September 4 order. In that order, the court found that the retainer agreement provided for Shasteen to receive one-third of the benefits obtained, and "[a]s counsel has effectuated payment of temporary total disability on behalf of [Briggs], 1/3 of each temporary total disability check shall be paid to counsel for so long as temporary total disability continues." However, the court then ordered

> that [Shasteen], counsel for plaintiff in this matter, is hereby allowed to withdraw from representation of the plaintiff. Counsel is granted a lien for [one-third] of plaintiff's temporary total disability benefits and $117.00 for costs advanced in this matter. [The State] is ordered to break out each temporary total disability check and remit [one-third] to plaintiff's former attorney and [two-thirds] to plaintiff. This distribution procedure is to continue while plaintiff is receiving temporary total disability *only*.

(Emphasis in original). Of significance in the language quoted above is that the court "granted a lien for 1/3 of [Briggs'] temporary total disability benefits and $117.00 for costs advanced in this matter." The court did not say that Shasteen was granted one-third of Briggs' TTD payments only henceforth; rather, the court granted a lien for one-third of Briggs' TTD benefits. One-third of Briggs' TTD benefits indicates *all* TTD benefits. The court then provided how payments should be divided between Shasteen and Briggs, and stated that this apportionment will continue only while Briggs is receiving TTD.

Shasteen argues that the lien ordered by the court should cover the total amount of the attorney's fee as approved by the court, and "not just those periodic payments the plaintiff receives after the fee agreement has been approved by the court." Brief for appellant at 8. We agree that once an attorney's lien is ordered by the court, the total amount set forth in that order should be protected under the lien. Attorney liens in workers' compensation cases are governed by Neb. Rev. Stat. § 48-108 (Reissue 2010), which provides:

> No claim or agreement for legal services or disbursements in support of any demand made or suit brought under the Nebraska Workers' Compensation Act shall be an enforceable lien against the amounts to be paid as damages or compensation or be valid or binding in any other respect, unless the same be approved in writing by a judge of the Nebraska Workers' Compensation Court. After such approval, if notice in writing be given the defendant of such claim or agreement for legal services and disbursements, *the same shall be a lien against any amount thereafter to be paid as damages or compensation.* When the employee's compensation is payable by the employer in periodical installments, the compensation court shall fix, at the time of approval, the proportion of each installment to be paid on account of legal services and disbursements.

(Emphasis added). The State argues that the statutory language "thereafter to be paid as damages or compensation," means that an attorney only has a claim to his one-third share of payments made to the plaintiff after the lien has been perfected and not to previous payments made to the claimant before the lien was established. Thus, the State asserts that the lien created by the September 4, 2013, order applied only to the TTD payments that the State owed to Briggs after the court entered its order, and not to the TTD payments previously paid to Briggs. Therefore, the State only paid Shasteen one-third of any TTD payments made after the September 4 order, which amounted to $169.36, since Briggs reached maximum medical improvement shortly after the entry of the lien order, resulting in the cessation of TTD payments. As calculated in more detail later, a one-third share of all TTD paid to Briggs would have amounted to Shasteen receiving $1,623.20, less any amounts he actually received. We are not persuaded by the State's interpretation of the statute for the reasons discussed below.

The statutory language quoted above does not prohibit consideration of fees accrued prior to the entry of a lien; rather, it provides that once the court orders such a lien, and "if notice in writing be given the defendant of such claim or agreement for legal services and disbursements, the same shall be a lien against any amount thereafter to be paid as damages or compensation." In other words, any further amounts paid by a defendant are subject to the lien--whatever that lien amount may be, based upon a court's order. Also, although the compensation court is to determine the proportion of each installment when payments are made in periodic installments, this again does not foreclose that additional amounts may be owed for benefits paid prior to entry of the lien. To interpret the statute to apply to benefits paid only prospectively after the entry of the lien order and to ignore benefits accrued prior to the order would result in rendering the attorney's employment contract with his client meaningless. The client could agree to pay one-third of all of his benefits to his attorney for services rendered, then delay paying his attorney, and until the attorney secures a lien through the court, the attorney would have no claim to those previously accrued and paid benefits.

In construing a statute, appellate courts are guided by the presumption that the Legislature intended a sensible rather than absurd result in enacting the statute. *Foster v. BryanLGH Med. Ctr. East*, 272 Neb. 918, 725 N.W.2d 839 (2007). An appellate court will place a sensible construction upon a statute to effectuate the object of the legislation, as opposed to a literal meaning that would have the effect of defeating the legislative intent. *Id.* The position

advanced by Shasteen in this case is the more sensible result. The compensation court specifically found that "[Shasteen] has effectuated payment of temporary total disability on behalf of [Briggs]," and in its order stated that "[Shasteen] is granted a lien for 1/3 of plaintiff's temporary total disability benefits and $117.00 for costs advanced in this matter." The court attributed Briggs' receipt of TTD to Shasteen and granted an attorney's lien for one-third of Briggs' TTD benefits.

We also note that in *Stueve v. Valmont Indus.*, 277 Neb. 292, 761 N.W.2d 544 (2009), the Nebraska Supreme Court reiterated a prior holding that when an attorney's services are terminated prior to the completion of representation, the attorney is entitled to the reasonable value of his or her services rendered up to the time of termination. In *Stueve*, an attorney represented an employee, and following a 2-day workers' compensation trial, an award was entered in favor of the employee, which included temporary and permanent indemnity payments already due and ongoing temporary benefits. Two years later, the attorney filed to withdraw as counsel for the employee and sought an attorney fee lien. The initial lien was for one-third of the temporary total indemnity payable pursuant to the award entered two years prior. The attorney appealed to the review panel, which remanded to the trial judge for additional findings with respect to the attorney's lien on the permanent indemnity benefits. On remand, the single judge noted that permanent indemnity payments had been "long ago paid," but the order did not elaborate on when the permanent indemnity payments were made or their amount. Upon a subsequent appeal, the review panel affirmed this order. However, the Supreme Court reversed and remanded the review panel's decision, with directions to hold a hearing to determine an award of attorney fees due to counsel. The Supreme Court noted that the value of an attorney's services is ordinarily a question of fact, and that while the evidence established that there was an agreement that counsel would receive one-third of any award, there was not a clear record of the amount counsel had been paid. The Supreme Court concluded that counsel was due one-third of the amount awarded to the claimant up to the date counsel was discharged, minus the amount counsel had been paid to date, and a reasonable amount of any future award. Notably, it is apparent in *Stueve* that while an attorney's lien was not ordered until 2 years after the entry of an award granting temporary and permanent indemnity, the attorney was still entitled to his share of fees that had accrued and been paid years prior to the entry of the lien award. As the *Stueve* court stated, the attorney was entitled to one-third of the amount awarded to the claimant up to the date the attorney was discharged.

In the present case, although the compensation court awarded Shasteen one-third of the TTD benefits owed to Briggs, when Shasteen sought to enforce his lien, the court failed to create a clear record as to what amounts were owed to Shasteen pursuant to its prior order. It was within the compensation court's jurisdiction to conduct such an analysis in response to Shasteen's request for further order, and to enter such orders as necessary to resolve any fee dispute arising out of its prior lien order.

As set forth in *Foster v. BryanLGH Med. Ctr. East*, 272 Neb. 918, 923, 725 N.W.2d 839, 844 (2007), "The Workers' Compensation Court has jurisdiction to determine a fee dispute arising out of an attorney's lien perfected pursuant to § 48-108, regardless of whether the attorney seeking enforcement had previously been discharged." Also, when an attorney's

services are terminated prior to the completion of representation, the attorney is entitled to the reasonable value of his or her services rendered up to the time of termination. *Stueve v. Valmont Indus.*, 277 Neb. 292, 761 N.W.2d 544 (2009). Accordingly, the compensation court should have determined what amounts were owed to Shasteen pursuant to its prior order.

As previously noted, Shasteen obtained TTD benefits for Briggs and was discharged as counsel before Briggs reached maximum medical improvement and was paid permanent partial disability (PPD). According to the indemnity payment history (Exhibit 3), Briggs was paid TTD benefits from May 24 through September 15, 2013. This amounts to 16 weeks and 3 days of TTD benefits. Exhibit 3 reflects that Briggs was paid $296.41 for weekly TTD benefits, or $42.34 per day. Based upon this court's review of Exhibit 3, the total TTD owed to Briggs for 16 weeks and 3 days equals $4,869.59. However, Exhibit 3 shows that TTD payments made to Briggs and Shasteen totaled $4,897.82. The difference is $28.23, which appears to come from an additional payment the State made to Shasteen for his one-third share of TTD paid on September 4 and 5 (one-third of $42.34 per day = $14.113 per day, multiplied by 2 days equals $28.23). Briggs had already been paid in full for those two days, and apparently rather than seek a refund from Briggs for Shasteen's one-third share of those two days, the State opted to make an additional payment directly to Shasteen. Accordingly, the total TTD owed to Briggs was $4,869.59, of which one-third equals $1,623.20. Exhibit 3 reflects that Shasteen was paid a total of $169.36. Additionally, according to Shasteen, he was fired when he took his share of the mid-July TTD payment that came to his office. Therefore, there may be an additional credit to the amount owed to Shasteen depending on what amount of the July payment he received, if any. Shasteen offered Exhibit 4 which indicates that he should be paid $1,576.15 for his attorney fee and $117 in costs, for a total of $1,693.15, less the $169.36 he received. It is unclear from the record how Shasteen arrived at the $1,576.15 amount; this is a matter that can be addressed on remand when the compensation court determines the actual amount owed to Shasteen pursuant to the September 4, 2013, attorney's lien order.

*Was the Permanent Partial Disability Payment Subject to the Lien?*

We next consider whether the State's payment of $2,007.77 to Briggs for PPD was subject to the attorney's lien, such that any remaining amounts owed to Shasteen for his one-third share of TTD benefits should have been satisfied out of that PPD compensation. When considering Shasteen's motion seeking enforcement of his attorney's fee lien, the compensation court did not calculate what amounts were still owed to Shasteen pursuant to its prior order as discussed above. Further, the compensation court either misconstrued Shasteen's request or determined it could not apply the lien for Shasteen's one-third share of TTD benefits to a payment made for PPD. The compensation court entered an order on April 9, 2014, finding that the payment log (Exhibit 3) "shows that Mr. Briggs was made a final payment of $2,000.77 for permanent partial disability on February 12, 2014. The final payment is the only payment at issue before the Court." The court then reaffirmed that "[t]he Court's previous order entered on September 4, 2013, specifically finds Mr. Shasteen is only entitled to one-third of temporary total disability benefits paid to plaintiff." As already discussed, Shasteen was not seeking anything other than his one-third share of the TTD benefits paid to Briggs. However, the court

went on to state that it "has no information or evidence before it which would suggest that the final payment rendered to plaintiff on February 12, 2014, and purporting to be permanent partial disability benefits are anything other than that," and therefore dismissed Shasteen's motion. This language suggests that the court may have misconstrued Shasteen's pending motion to mean that he was seeking a one-third share of Briggs' permanent partial disability (PPD) payment, which he was not, or that the compensation court did not believe the PPD funds could be used to satisfy an attorney's fee lien that was based upon TTD benefits only.

Shasteen claims that the outstanding one-third share of all the TTD paid to Briggs was owed to him and that this outstanding amount was "a lien against any amount thereafter to be paid as damages or compensation," as set forth in § 48-108. Once a lien is established by court order and proper notice has been given, the defendant is on notice that the order "shall be a lien against any amount thereafter to be paid" as compensation. The statute says "any amount thereafter" paid; it does not create any restrictions based upon the characterization of the compensation owed to the plaintiff, i.e., temporary or permanent disability; rather, the lien applies to "any" amounts paid. See § 48-108. In this case, the court should have first determined the total of the amount owed to Shasteen for his one-third share of TTD benefits, less credits, and then ordered that he be paid that amount pursuant to the lien.

Accordingly, we conclude the court erred in dismissing Shasteen's motion for the reasons discussed above; the evidence in the record does not support its order of dismissal. Accordingly, we reverse the decision of the Workers' Compensation Court, and remand with directions to hold a hearing and enter an order showing its determination of the amount of attorney fees owed to Shasteen pursuant to the court's September 4, 2013, order granting him an attorney's fee lien for one-third of Briggs' temporary total benefits, as well as setting forth any credits to be applied for amounts previously received by Shasteen.

CONCLUSION

The Workers' Compensation Court's April 9, 2014, order dismissing Shasteen's motion for further order is reversed and remanded with directions as set forth herein.

REVERSED AND REMANDED WITH DIRECTIONS.